**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**GARY BULLARD and**
**CYNTHIA W. BULLARD,**

        **Plaintiffs,**

**v.**                                      **Case No. 3:10cv434-MCR/CJK**

**U.S. BANK, N.A., et al.,**

        **Defendants.**

_____/

## ORDER

The plaintiffs, Gary and Cynthia Bullard (collectively "the Bullards") brought suit against U.S. Bank, N.A. ("U.S. Bank") and Five Brothers Mortgage Company Services and Securing, Inc. ("Five Brothers"), alleging that their actions amount to state law civil theft by U.S. Bank (Count I); state law conspiracy to commit civil theft by U.S. Bank and Five Brothers (Count II); and a violation of the Florida Consumer Collection Practices Act ("FCCPA") by U.S. Bank (Count V).[1]  Pending before the court is a motion for summary judgment on Count II of the Second Amended Complaint, filed by Defendant Five Brothers (doc. 64), and a motion for summary judgment on Counts I, II, and V, filed by Defendant U.S. Bank (doc. 79).  The Bullards oppose the motions.  (Doc. 89).  Having fully considered the record and the arguments of the parties, the court concludes that the motions are due to be granted.

---

[1] The Bullards also sued ASAP Field Services, LLC, Douglas C. Zahm, P.A., and Nicole R. Ramirez in Counts III, IV, and VI, but these parties have been dismissed by stipulation of the parties (docs. 67 & 78).

Background[2]

This case arises from a dispute between the Bullards and U.S. Bank over actions taken by Five Brothers, on behalf of U.S. Bank, related to the Bullards' former residence located at 965 Fleming Circle in Pensacola, Florida ("the Fleming property") on which U.S. Bank held a mortgage.[3]  In sum, the Bullards allege that U.S. Bank and Five Brothers deprived them of the Fleming property and a shed and its contents which were located on an adjacent lot the Bullards owned (the "Springmeyer lot").  The Bullards seek damages for the value of the real property, which Mr. Bullard testified he had purchased for $98,000 in 1998 and had been attempting to sell since 2008 for approximately $140,000; and for the value of personal property allegedly removed from the Fleming property, which Mr. Bullard estimated at nearly $14,000.  They also seek punitive damages and attorneys' fees.[4]

The record demonstrates the following.  According to Mr. Bullard's deposition testimony, the Bullards moved out of the Fleming property in mid-2009, removing most of their personal property and disconnecting utilities to the premises at that time.  The Bullards had listed the house for sale and had given the front door key to their realtor.  Mr. Bullard stated that they vacated the house because he was in the process of remodeling it; they had left only a few pieces of furniture and some miscellaneous cleaning supplies in the house, and a workbench in the garage.  He did not recall any personal property having been left in the yard except for a table on the front porch.  He stated that a shed, located on the adjacent vacant Springmeyer lot that he owned was "packed" with personal

---

[2]  For the limited purposes of this summary judgment proceeding, the court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is the Bullards.  *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted).  The court is mindful that "what is considered to be the facts at the summary judgment stage may not turn out to be the actual facts if the case goes to trial." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

[3]  Market Street Mortgage acquired a lien on the Fleming property as security for a loan to the Bullards by mortgage agreement executed July 20, 1999.  U.S. Bank, incorporated in the state of Michigan, became the mortgagee on the property after a merger with Market Street Mortgage Corporation.

[4]  The court has diversity jurisdiction over the suit pursuant to 28 U.S.C. § 1332(a).

property.[5]  (Doc. 90-4, at 11).  Mr. Bullard testified by deposition that he had locks on the doors and kept them locked while he was away.   However, one day in early 2010, he discovered that the locks had been changed and a notice was posted on the front door. The notice read:

> Five Brothers, warning. Phone 586-772-7600. This property was found to be unsecured and vacant.  In protection of interest of owners and mortgage, and in accordance with the terms of the security interests, the property has been secured against entry by unauthorized persons to prevent possible damages.  Key will be made to any person entitled to enter thereto.  For further information, contact Five Brothers. We do not own or rent this property.

(Doc. 80, at 3).  Bullard testified that he read the notice and thought that the property had been foreclosed, although the notice provided a number to call and stated that a key would be provided to any person entitled to enter.[6]  He called Five Brothers at the number listed on the notice to inform them that the shed was not on the Fleming property lot but rather on the adjacent lot; he asked that the lock be removed from the shed but did not request a key.  When he asked why the locks had been changed, he was told that the mortgage company had hired them "to secure the property, and for foreclosure reasons." (Doc. 90-4, at 18).  He stated he did not request a key to the house because he thought he was not entitled to one due to the foreclosure, which he said the sign led him to believe had been completed.[7]  He admitted, however, that no one ever told him he could not enter onto the

---

[5]  The personal property included a disassembled recreational vehicle shed; a 10-foot utility trailer with camper top; three riding lawn mowers; a self-propelled mower; a weed eater; a set of galvanized fenders; exhaust converters; cylinder leads for an engine; an engine block; heavy-gauge steel; and a heavy-duty semi-trailer tarp.

[6]  On August 24, 2009, U.S. Bank had filed foreclosure proceedings on the property.  The Bullards were served on September 18, 2009 and filed an answer on September 30, 2009, but U.S. Bank was not awarded final judgment in the foreclosure proceeding until June 30, 2011.

[7]  There is no evidence that Mr. Bullard contacted his realtor about gaining access to the house, and the record is undisputed that the front door lock had not been changed.  Also, it appears that the Bullards were represented by counsel at this time or at least had consulted with counsel regarding the foreclosure.  Although counsel did not make a formal appearance on their behalf in the foreclosure proceeding until May 14, 2010, which was well after the locks had been changed in January, during his deposition, Mr. Bullard was asked: "And at least from September of 2009 when Mr. Committee [plaintiff's attorney] hand wrote that answer for you, you said you felt like you thought he was your attorney at that point.  So at least from that point you had legal representation in the matter, is that correct?"  And Mr. Bullard answered, "As far as I know, yes." (Doc.90-4, at 40).  Thus, according to his own testimony, Mr. Bullard had consulted an attorney by September

property.  He testified that he returned to the property on only a couple of occasions, once to cover the pool and remove some trash in response to a complaint from the county, and once to secure a gate.  Mrs. Bullard likewise testified that she never attempted to obtain a key after the locks had been changed.

The record shows that by letter dated May 15, 2009, which was around the time that the Bullards said they had moved out of the house, U.S. Bank notified the Bullards that they were delinquent on their mortgage payments, that their failure to make payment would result in acceleration of the full balance due, and that U.S. Bank would be "making periodic inspections of the property in accordance with the mortgage . . . to protect our investment." (Doc. 64-3).  The mortgage provided that the mortgagee must not allow the property to deteriorate and that if the mortgagee failed to care for the property, U.S. Bank could take measures to protect the property from waste or impairment.[8]  The letter also informed them that foreclosure and public sale of the property would follow if they did not make the required payments.  They did not make any more payments.  U.S. Bank sent a second letter on August 10, 2009, stating that foreclosure proceedings would be instituted and again informing the Bullards that periodic inspections would be made, and "should the property become vacated or unsecured at anytime, we will immediately secure and winterize it in accordance with the applicable provision in your mortgage."  (Doc. 64-4). The letter further stated, "Please understand that we are not attempting to dispossess you from your property at this time; however, this is to advise you that we will preserve our security interest as provided in the mortgage agreement."  (*Id.*).  The Bullards do not contest that the letters were sent.[9]

---

2009, which suggests that he was aware of the status of the foreclosure proceedings.

[8] Clause 5 of the mortgage agreement provides that should the Bullards permit "waste, impairment, or deterioration" of the property or not keep buildings "in good repair," U.S. Bank may make repairs "as in its discretion it may deem necessary for the proper preservation" of the property to protect its security interest. (Doc. 64-2, at 3).

[9] The Bullards' statement of undisputed facts admits that U.S. Bank sent the letters, and they do not contest that the letters sent by U.S. Bank on May 15, 2010, and August 10, 2010, satisfy written notice pursuant to the mortgage.  Clause 15 of the mortgage provides that the mailing of a written notice or demand is "sufficient notice and demand in any case arising under this instrument." (Doc. 64-2, at 4). However, Mr. Bullard stated in his deposition when questioned about one of the letters that he did not remember receiving the letter.

The defendants admit that on or about January 14, 2010, Five Brothers' agent entered onto the Fleming property[10] for the purpose of protecting U.S. Bank's property investment after receiving a report that the residence had been vacated.[11]  Five Brothers' agent changed the lock on the back door to the house and a shed, winterized the house, attached a sign on the front door, and removed debris from the yard to cut the grass; Five Brothers denies removing anything from the shed.[12]  The record shows that Five Brothers did not change the lock to the front door and that it notified the Bullards' realtor, who had been attempting to sell the property for them, that the front door lock had not been changed.  The Bullards were not explicitly informed that they still had access to the premises through the front door, and according to Mr. Bullard's affidavit, the realtor had the only key to the front door at that time.  Five Brothers did not remove the lock to the shed after Mr. Bullard notified them that it was on an adjacent lot, and the parties dispute the location of the shed,[13] but it is undisputed that Mr. Bullard did not ask for a key.  The Bullards' realtor continued to have access to show the home to potential buyers.

The Bullards filed suit, contending that the entering of the property in January 2010

---

[10]  It is undisputed that U.S. Bank hired Five Brothers to secure and make repairs to the property.  In turn, Five Brothers contracted the work out to ASAP Field Services, LLC.("ASAP"), and the work was performed by John Darnell of ASAP.  U.S. Bank does not contest that Five Brothers and ASAP were working on its behalf.  Additionally, Five Brothers had an employees located on the premises of U.S. Bank, and Five Brothers followed the orders of U.S. Bank with regard to securing properties.

[11]  The Bullards' statement of undisputed facts states explicitly, "The purpose of securing the property was to protect U.S. Bank's investment."  (Doc. 90, at ¶ 5).

[12]   More specifically, the work orders to secure the property and Darnell's affidavit show that on January 14, 2010, he inspected the property and changed one lock on the back door of the house, secured the shed, and placed the notice on the front door.  He called the realtor to explain that she could still access the house through the front door.  His report states that the grass was not cut at that time because of debris.  He made a bid to remove the debris which was in the way of cutting the grass and in the shed.  On January 28, 2010, he returned to treat the pool and cut the grass, which required him to remove exterior debris described as car gas tanks, drainage hose, PVC, iron, a trailer with a camper top, riding mowers, lumber, a large hot tub, tires, a rusted grill, roofing, and car parts.  He further states that on February 15, 2010, he returned having been instructed to remove hazardous materials from the shed, but he discovered that the shed was already empty, so he did not remove anything from the shed.  Darnell performed other yard maintenance on the property in February 2011.  The work orders instructed him not to remove personal property.

[13]  According to the Bullards, the shed in question was originally located on the Fleming property lot, as shown by its property appraisal, but they moved it to the Springmeyer lot when they put in a swimming pool, prior to Five Brothers changing the locks.

to change locks and the removal of personal property amounted to civil theft, a conspiracy to commit civil theft between U.S. Bank and Five Brothers, and an unfair collection practice in violation of the FCCPA. U.S. Bank and Five Brothers move for summary judgment, arguing the Bullards have not presented evidence to support their claims.

**Discussion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See Anderson*, 477 U.S. at 249. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). The court must view all the evidence, and all factual inferences reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *See Anderson*, 477 U.S. at 249. A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a material issue of genuine fact that precludes summary judgment. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). There is no dispute that the substantive law of Florida law applies in this diversity case.

Count I–Civil Theft

The Bullards assert that U.S. Bank, through Five Brothers and ASAP as its agents, committed civil theft in violation of Florida law.  *See* Fla. Stat. § 772.11.  Florida law provides a civil remedy for theft that explicitly requires proof "by clear and convincing evidence."  *Id.*  "Clear and convincing evidence entails proof that a claim is 'highly probable,' a standard requiring more than a preponderance of the evidence but less than proof beyond a reasonable doubt."  *Ward v. Hall*, 592 F.3d 1144, 1177 (11th Cir.) (internal marks omitted), *cert. denied*, 506 U.S. 1085 (2010).  The evidence should produce a "firm belief or conviction . . . as to the truth of the allegation sought to be established" for the trier of fact. *Anthony Distribs. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1576 (M.D. Fla. 1996). Simply put, the Bullards must present sufficient evidence for a reasonable jury to find the necessary elements were "'shown with convincing clarity.'" *Id.* (quoting *Anderson*, 477 U.S. at 257). To prove civil theft, the Bullards must show by clear and convincing evidence that U.S. Bank's actions satisfy all elements of theft, including that the actions were taken with a "felonious intent to commit a theft."[14] *Ames v. Provident Life & Accident Ins. Co.*, 942 F. Supp. 551, 560-61 & n.5 (S.D. Fla. 1994), *aff'd*, 86 F.3d 1168 (11th Cir. 1996) (Table).

U.S. Bank argues that the Bullards have failed to show by clear and convincing evidence that it acted with the required felonious intent necessary to prove civil theft.  The court agrees.  Although the Bullards argue that U.S. Bank deprived them of property by a "feloniously trespass," asserting that the terms of the mortgage did not authorize the mortgagee to enter the property, Florida Statute § 772.11 does not provide a civil remedy for trespass.  To the extent the Bullards are equating "felonious trespass" with the civil theft element of "felonious intent," the argument fails.  Plaintiffs offer no case law to rebut the established rule that the felonious intent element of civil theft requires an intent to *steal*, not merely the *unauthorized entry* on another's property.  *See, e.g., Anthony Distribs.*, 941 F.

---

[14]  Fla. Stat. § 812.014 provides in relevant part:
(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.
(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Supp. at 1575 ("'Readily apparent from the face of [§ 772.11], felonious intent to steal on the part of the defendant' is a 'necessary element of proof.'") (quoting *Westinghouse Elec. Corp. v. Shuler Bros.*, 590 So. 2d 986, 988 (Fla. 1st DCA 1991)); *Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 501 (Fla. 3d DCA 1994) (stating "intent to commit a theft" or "intent to steal" is a necessary element of civil theft); *Aspen Investm't Corp. v. Holzworth*, 587 So. 2d 1374, 1376 (Fla. 4th DCA 1991) (stating that although intent may be shown by circumstantial evidence, "intent to deprive [the plaintiff] of its property and appropriate it to his own use knowing that he was not entitled to do so" must be proven by clear and convincing evidence to establish civil theft). A mere unauthorized entry or trespass does not demonstrate the required state of mind for civil theft. *See Smith v. Board of Regents ex rel. Florida A&M Univ.*, 701 So. 2d 348, 349 (Fla. 1st DCA 1997) (stating claim for civil theft was properly dismissed where "no facts were alleged to the effect that the [defendants] harbored any evil intent as far as their actions were concerned"). Moreover, implicit in the plan language terms of the mortgage permitting U.S. Bank the discretion to make repairs for the protection of its collateral in the event the mortgagor fails to keep the property in good repair, is the right to enter the property to do so.

The Bullards also argue that the facts demonstrate a "felonious deprivation" equaling the requisite criminal intent. Although felonious intent may be implied where the circumstances give rise to a clear and convincing inference of an intent to steal, *see generally Infante v. Vantage Plus Corp.*, 27 So. 3d 678, 680 (Fla. 3d DCA 2009), the record here does not support such an inference. The locks were changed only after the Bullards had been given notice through two letters that they were delinquent on payments and that U.S. Bank would make inspections and secure the property if need be; they had vacated the property and turned off the utilities, making the property appear to have been abandoned; the notice on the door informed them that they could obtain a key, and they admit having read the notice; and they were never told they could not enter the property. Moreover, the front door lock was not changed, and their realtor, to whom they had given their key and permission to place the realtor's lock on the door, was expressly informed that she and the owner still had access through the front door. Thus, as to the house and

real property secured by the mortgage, even viewing the evidence in the light most favorable to the Bullards, they were not deprived of their property by U.S. Bank's efforts to secure and maintain it.  There simply is no "clear and convincing evidence" from which it may be inferred that U.S. Bank acted with any intent other than to secure the real property in which it had a valid security interest after the owners were in default and the property appeared to have been vacated.  Even assuming that U.S. Bank made a mistake in determining that the house had been vacated, such a mistake does not amount to clear and convincing evidence of an intent to steal in this circumstance.  *See Anthony Distribs.*, 941 F. Supp. at 1575-76 ("The clear and convincing evidence standard seems to preclude evidence that is ambiguous.") (citing *Westinghouse Elec. Corp.*, 590 So. 2d at 988) (internal marks omitted); *Id.* at 1576 ("evidence must be such that a reasonable jury might find that the elements 'had been shown with convincing clarity.'") (quoting *Anderson*, 477 U.S. at 257).

The Bullards also argue that the actions of Five Brothers, on U.S. Bank's behalf, of improperly locking the shed, which was located on an adjacent lot, and removing their personal property shows a felonious intent to steal.  However, even assuming an intent to steal can be implied as to the shed and personal property removed, viewing the evidence in the light most favorable to the Bullards, an intent to steal the shed and items of personal property does not imply an intent to steal the real property, in which U.S. Bank held a valid mortgage and security interest.  Furthermore, the value of the personal property allegedly stolen does not meet this court's jurisdictional threshold absent evidence of an intent to steal correlating with the real property itself.  Moreover, no intent to steal can be inferred from locking the shed, which the Bullards admit was shown on the Fleming property appraisal as located on the Fleming property.  As U.S. Bank argues, its agent reasonably relied on the appraisal report and this objectively reasonable mistake does not evidence criminal intent.  No jury could reasonably conclude otherwise.  The allegation that personal property was taken, some of which U.S. Bank and its agents admit was removed but described as "debris" that was discarded in order to cut the grass, could give rise to an inference of an intent to steal only with regard to that property, not any intent to steal the real property.  Because the Bullards have failed to provide proof of an essential element

of civil theft in an amount that exceeds the jurisdictional threshold, the court will grant U.S. Bank's motion for summary judgment as to Count I.

Count II–Conspiracy to Commit Civil Theft

To state a conspiracy claim for civil theft, the Bullards must show:  "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008)).  U.S. Bank and Five Brothers argue that because the elements of civil theft are lacking, summary judgment is appropriate on the conspiracy claim as well for lack of an underlying tort.  While certain Florida civil conspiracy claims require a plaintiff to also prove the elements of the underlying tort, the Eleventh circuit has explained that the State's law is inconsistent on the matter.  *See id.* at 1281 ("Whether the [State civil conspiracy claim's] underlying tort must have been completed (and thus be independently actionable) . . . is open to question.  The Florida courts have been somewhat divided concerning the answer to this question.").  Here, however, even assuming a conspiracy claim could survive after a grant of summary judgment on the underlying tort, the court finds that summary judgment is nonetheless appropriate on Count II.  The Bullards have presented no more than a "mere scintilla of evidence" that U.S. Bank and Five Brothers conspired to commit civil theft against the Plaintiffs.  Mr. Bullard (doc. 64-1, at 52-53) and Mrs. Bullard (doc. 64-5, at 50) each admit their only evidence of conspiracy is the fact that multiple companies were involved in the alleged civil theft and that Five Brothers had a representative permanently located at U.S. Bank's headquarters due to the two corporations' frequent work together.  However, the Bullards fail to provide any case law that would permit a jury to reasonably infer a conspiracy based merely on a working relationship between two corporations or any evidence of an agreement to engage in unlawful activity aside from their own conclusory remarks.  Thus, the court finds that both U.S. Bank's and Five Brothers' motions for summary judgment as to Count II should be granted.

Count V–FCCPA

U.S. Bank argues that it is also entitled to summary judgment on the Bullards'
FCCPA claim.  The Bullards contend U.S. Bank's actions constitute a violation of the
FCCPA; specifically, those provisions prohibiting a consumer debt collector from engaging
in conduct that could reasonably be expected to harass the debtor or asserting a legal right
that the collector knows does not exist.  *See* Fla. Stat. § 559.72(7) & (9).[15]  In Count V, the
Bullards ask the court, *inter alia*, for actual damages up to the value of the Fleming
property; therefore, despite finding in favor of Defendants' motions for summary judgment
as to Counts I and II, this court retains diversity jurisdiction over the claim asserted in
Count V.

The purpose of the FCCPA is to "eliminate abusive and harassing tactics in the
collection of debts." *Brandt v. I.C. System, Inc.*, No. 8:09cv126, 2010 WL 582051, *2 (M.D.
Fla. 2010) (citing *Trent v. Mortg. Elec. Registration Sys. Inc.*, 618 F. Supp. 2d 1356, 1361
(M.D. Fla. 2007)).  To prove a violation under § 559.72(7), the Bullards must provide
evidence from which a reasonable jury could find that U.S. Bank "willfully engaged" in
actions amounting to a "purpose and frequency" of harassment pursued in an effort to
collect on a consumer debt.[16]  *See Locke v. Wells Fargo Home Mortg.*, No. 10-60286-Civ.,
2010 WL 4941456, *2 (S.D. Fla. 2010).  The Bullards contend § 559.72(7) uses an
objective standard of reasonableness that is blind to whether or not they were actually
harassed.  Regardless, they must prove willfulness to harass on the part of U.S. Bank, of

---

[15]  In relevant parts, Fla. Stat. § 559.72 reads:

> In collecting consumer debts, no person shall: . . . (7) Willfully communicate
> with the debtor or any member of her or his family with such frequency as
> can reasonably be expected to harass the debtor or her or his family, or
> willfully engage in other conduct which can reasonably be expected to abuse
> or harass the debtor or any member of her or his family; . . . (9) Claim,
> attempt, or threaten to enforce a debt when such person knows that the
> debt is not legitimate or assert the existence of some other legal right when
> such person knows that the right does not exist.

Section § 559.77 provides civil remedies for violations described in § 559.72, and allows for actual damages,
statutory damages, punitive damages, court costs, and attorney's fees.

[16]  To the extent the Bullards allege the two letters sent by U.S. Bank, dated May 15th, 2009, and
August 10th, 2009, were communications reasonably expected to harass, a reasonable jury could not find a
violation of § 559.72(7).  *See Schauer v. Morse Operations, Inc.*, 5 So.3d 2, 5 (4th DCA 2009) (stating that
seven telephone calls from creditor to debtor lacked frequency or purpose to create genuine issue of fact).

which there is no evidence.  U.S. Bank's reliance on its mortgage agreement was reasonable in the circumstances and does not evidence willfulness to harass.  No jury could reasonably conclude otherwise.  Also, the Bullard's have conceded that U.S. Bank was securing the property to protect its investment.  (*See* Docs 89, at 7; 90, at ¶ 5). Consequently, the Bullards fail to satisfy either the "willfully engage" element or the purpose and frequency element of § 559.72(7).[17]

As to their claim that U.S. Bank violated § 559.72(9), the Bullards must show "actual knowledge of any impropriety or overreaching that is not legitimate" by U.S. Bank.  *Locke*, 2010 WL 4941456 at *2.  For the reasons explained in the analysis of Count I, which will not be repeated here, the Bullards have failed to prove that U.S. Bank acted with actual knowledge of impropriety or overreach.

Thus, a reasonable jury could not find U.S. Bank in violation of the FCCPA, the court will grant U.S. Bank's motion for summary judgment on Count V.

Accordingly:

1.	Defendant Five Brothers' Motion for Summary Judgment (doc. 64) on Count II is **GRANTED.**

2.	Defendant U.S. Bank's Motion for Summary Judgment (doc. 79) on Counts I, II and Count V is **GRANTED**.

3.	The Clerk is directed to enter judgment accordingly and close the case.

**DONE and ORDERED** this 30th day of June, 2012.


*M. Casey Rodgers*
**M. CASEY RODGERS
CHIEF UNITED STATES DISTRICT JUDGE**

---

[17]  The court also has doubts whether the securing of the property to protect U.S. Bank's interest equates to "collecting a consumer debt."  However, as the Bullards have already admitted U.S. Bank acted to protect its security interest, the court has no need to decide if the actions amount to an attempt to collect a consumer debt.